Robert Reeves Anderson*
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
(303) 863-1000
reeves.anderson@arnoldporter.com

William T. Sharon*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
william.sharon@arnoldporter.com

Blaine J. Benard (5661)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
(801) 799-5800
bjbenard@hollandhart.com

Alexander D. White*
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
(303) 295-8517
adwhite@hollandhart.com

*Pro hac vice

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER BISAILLON, an individual, on behalf of himself and those similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>VAIL RESORTS, INC., a Delaware corporation,<br><br>     Defendant. | **DEFENDANT'S SECOND MOTION TO DISMISS**<br><br>Case No. 25-CV-00020-DBB-JCB<br><br>Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................3

    A.    Plaintiff Purchased an Epic Pass and Agreed to Terms of Sale .............................3

    B.    The Ski Patrol Strike .........................................................................................8

LEGAL STANDARDS.......................................................................................................9

ARGUMENT.....................................................................................................................10

I.    THE TERMS OF SALE BAR PLAINTIFF FROM SUING OUTSIDE
    OF COLORADO OR BRINGING A CLASS ACTION .................................................10

    A.    Plaintiff Agreed to File any Claims in Colorado ...................................................10

        1.    The Forum Selection Clause Is Valid and Mandatory .............................11

        2.    The Forum Selection Clause Is Enforceable............................................12

    B.    Plaintiff Waived His Ability to Bring a Class Action Lawsuit ............................13

II.    PLAINTIFF FAILS TO STATE A CLAIM ..................................................................14

    A.    The Complaint Fails to State a UCSPA Claim.....................................................14

        1.    Plaintiff Cannot Pursue Class Claims Under the UCSPA .......................14

        2.    The Choice-of-Law Clause Bars Plaintiff's UCSPA Claim.....................15

        3.    The Complaint Fails to Allege a Deceptive or Unconscionable Act ........16

    B.    The Complaint Fails to State a Fraud Claim .........................................................19

        1.    Plaintiff's Pre-Contract "Purchase" Theory Fails ...................................19

        2.    Plaintiff's Post-Contract "Use" Theory Fails ..........................................19

    C.    The Complaint Fails to State an Unjust Enrichment Claim .................................23

    D.    The Economic Loss Rule Bars Plaintiff's Tort Claim .........................................24

I.    PLAINTIFF'S NEW ALLEGATIONS DO NOT SAVE HIS CLAIMS .........................26

CONCLUSION.................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Good Time Rental, LLC v. First Am. Title Agency, Inc.*,
259 P.3d 534 (Colo. App. 2011) ............................................................................25

*Adams Reload Co. v. Int'l Profit Assocs., Inc.*,
143 P.3d 1056 (Colo. App. 2005) ..........................................................................12

*Anderson v. Logitech, Inc.*,
No. 17-CV-6104, 2018 WL 1184729 (N.D. Ill. Mar. 7, 2018)..............................17

*In re Archibald*,
482 B.R. 378 (Bankr. D. Utah 2012).....................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................9

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013) ................................................................................................12

*Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*,
166 F. Supp. 3d 684 (E.D. La. 2016) .....................................................................15

*Beckley v. Skarupa*,
No. 15-CV-766, 2016 WL 374485 (D. Colo. Feb. 1, 2016)..................................19

*Been v. O.K. Indus., Inc.*,
495 F.3d 1217 (10th Cir. 2007)..............................................................................16

*Birdsong v. AT & T Corp.*,
No. 12-CV-6175, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013).........................13

*Bowers v. Tension Int'l, Inc.*,
No. 15-CV-2734, 2016 WL 3181312 (D. Colo. June 8, 2016)..............................13

*Cahey v. Int'l Bus. Machs. Corp.*,
No. 20-CV-781, 2020 WL 5203787 (D. Colo. Sept. 1, 2020)...............................22

*Callegari v. Blendtec, Inc.*,
No. 18-CV-308, 2018 WL 5808805 (D. Utah Nov. 6, 2018).........................15, 17

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
208 F. Supp. 3d 494 (E.D.N.Y. 2016)...................................................................16

*Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*,
   567 F.3d 1191 (10th Cir. 2009)..................................................................................21

*Cook v. Gen. Nutrition Corp.*,
   No. 17-CV-135, 2017 WL 4340664 (W.D. Pa. Sept. 29, 2017)............................................15

*Cordero v. Olson Assocs. P.C.*,
   No. 23-CV-756, 2024 WL 3401056 (D. Utah July 12, 2024) ..............................................17

*Cotte v. CVI SGP Acquisition Tr.*,
   No. 21-CV-299, 2022 WL 464307 (D. Utah Feb. 15, 2022)............................................17, 18

*Cowles v. Bonsai Design LLC*,
   No. 19-CV-1946, 2020 WL 3036067 (D. Colo. June 5, 2020)............................................3, 5

*Cuervo v. Sorenson*,
   112 F.4th 1307 (10th Cir. 2024) ................................................................................3

*Debora v. WPP Grp. PLC*,
   No. 91-CV-1775, 1994 WL 177291 (S.D.N.Y. May 5, 1994) ..............................................3

*DeLuca v. Royal Caribbean Cruises, Ltd.*,
   244 F. Supp. 3d 1342 (S.D. Fla. 2017)...........................................................................13

*Dream Finders Homes LLC v. Weyerhaeuser NR Co.*,
   506 P.3d 108 (Colo. App. 2021) ................................................................... 24, 25, 26

*Dupray v. Oxford Ins. Co. TN LLC*,
   645 F. Supp. 3d 1095 (D. Colo. 2022) ...................................................................10, 11

*Excell, Inc. v. Sterling Boiler & Mech., Inc.*,
   106 F.3d 318 (10th Cir. 1997) ................................................................................10

*Fell v. Alco Cap. Grp. LLC*,
   538 P.3d 1249 (Utah Ct. App. 2023)............................................................................18

*Former TCHR, LLC v. First Hand Mgmt. LLC*,
   317 P.3d 1226 (Colo. App. 2012) ................................................................................24

*Gossling v. Exxon Mobil*,
   No. 20-CV-804, 2021 WL 12314077 (D. Utah July 7, 2021) ..............................................10

*Hayek v. Bank of Am. Home Loans*,
   No. 13-CV-116, 2013 WL 11521926 (D. Wyo. Dec. 13, 2013) .....................................20, 26

*Hayes v. Facebook*,
   No. 18-CV-2333, 2019 WL 8275335 (D. Colo. Mar. 6, 2019) .......................................10, 11

*Jackson v. Philip Morris Inc.*,
   46 F. Supp. 2d 1217 (D. Utah 1998) ...................................................................9

*Johnson v. Blendtec, Inc.*,
   500 F. Supp. 3d 1271 (D. Utah 2020) ................................................................15

*Kelvion, Inc. v. PetroChina Canada Ltd.*,
   918 F.3d 1088 (10th Cir. 2019)..........................................................................11

*Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*,
   No. 12-CV-3012, 2016 WL 8416760 (D. Colo. July 13, 2016) .............................5

*Lewis v. Eassit, Inc.*,
   No. 22-CV-121, 2023 WL 2522812 (D. Utah Mar. 15, 2023) .............................13

*Linford v. First Franklin*,
   No. 11-CV-793, 2011 WL 5508826 (D. Utah Nov. 9, 2011).................................9

*Lu v. AT & T Servs., Inc.*,
   No. 10-CV-5954, 2011 WL 2470268 (N.D. Cal. June 21, 2011).........................13

*Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*,
   965 P.2d 105 (Colo. 1998)..................................................................................20

*Marcovecchio v. Wright Med. Grp., Inc.*,
   No. 18-CV-274, 2019 WL 1406606 (D. Utah Mar. 28, 2019) .........................9, 19

*Matchett v. BSI Fin. Servs.*,
   No. 21-CV-211, 2021 WL 3473062 (D. Utah Aug. 6, 2021).........................14, 15

*McAuliffe v. Vail Corp.*,
   69 F.4th 1130 (10th Cir. 2023) .......................................................................23, 24

*Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*,
   130 F.3d 950 (10th Cir. 1997) ........................................................................23, 24

*MPVF Lexington Partners, LLC v. W/P/V/C, LLC*,
   148 F. Supp. 3d 1169 (D. Colo. 2015) ...............................................................11

*Niemi v. Lasshofer*,
   770 F.3d 1331 (10th Cir. 2014)..........................................................................13

*Oceanside Ten Holdings.com, LLC v. Mktg, Inc.*,
   No. 17-CV-2984, 2018 WL 2277004 (D. Colo. May 18, 2018)...........................11

*Overturf v. Rocky Mountain Chocolate Factory, Inc.*,
   No. 08-CV-365, 2008 WL 11334952 (C.D. Cal. Oct. 27, 2008)..........................15

*P.R. v. Zavaras*,
    49 F. App'x 836 (10th Cir. 2002) ........................................................17

*Renfro v. Champion Petfoods USA, Inc.*,
    25 F.4th 1293 (10th Cir. 2022) ..................................................... 19, 20

*Riverbend Ranch Equestrian Ctr. LLC v. Duvall*,
    No. 15-CV-751, 2017 WL 4325798 (D. Utah Sept. 27, 2017).............16

*Roman v. Spirit Airlines, Inc.*,
    No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) .............13

*Sanchez v. Ford Motor Co.*,
    No. 13-CV-1924, 2014 WL 2218278 (D. Colo. May 29, 2014)............27

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) .............................................................................11

*Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*,
    No. 14-CV-134, 2014 WL 4400764 (D. Colo. Sept. 5, 2014).............20

*Stewart Title Guar. Co. v. Dude*,
    708 F.3d 1191 (10th Cir. 2013)...........................................................21

*Storey v. Seipel*,
    No. 22-CV-486, 2024 WL 4436609 (D. Utah Oct. 24, 2024).............10

*Top Rail Ranch Est., LLC v. Walker*,
    327 P.3d 321 (Colo. App. 2014) .........................................................26

*Vinton v. Virzi*,
    269 P.3d 1242 (Colo. 2012).................................................................22

*Warner v. Nutrien, Ltd.*,
    No. 18-CV-1615, 2018 WL 6528137 (D. Colo. Dec. 12, 2018) ..........25

*Wisehart v. Zions Bancorporation*,
    49 P.3d 1200 (Colo. App. 2002) .........................................................19

*Zako v. Hamilton Co.*,
    No. 16-CV-166, 2019 WL 320552 (D. Nev. Jan. 23, 2019) ...............13

## Statutes

28 U.S.C. § 1404(a)........................................................................ 1, 10, 11

Colo. Rev. Stat. § 6-1-105 .....................................................................16

Utah Code § 13-11-4 ..............................................................................16

Utah Code § 13-11-5 ........................................................................................................... 16

Utah Code § 13-11-19(4)(a) ................................................................................................ 15

**Other Authorities**

Julie Jag, *Park City Patrollers Authorize Strike, Could Affect Holiday Skiing*, The
    Salt Lake Trib. (Dec. 16, 2024) ......................................................................... 8, 22

Kristine Weller, *Park City Mountain Ski Patrol Union Files Unfair Labor
    Practice Complaints Against Vail*, The Salt Lake Trib. (Dec. 20, 2024) ........................... 9, 22

Mead Gruver, *Ski Patrollers Reach Deal to End Strike at Utah's Park City
    Mountain Resort*, Associated Press, (Jan. 8, 2025) ................................................. 9

Restatement (Second) of Torts § 551 (1977) ........................................................ 20, 21

Vail Resorts, Inc. ("Vail") moves to dismiss Christopher Bisaillon's Second Amended Complaint (Dkt. 37) under F.R.C.P. 12(b)(6) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a).

## INTRODUCTION

As stated by its mission, Vail strives to provide its guests with an "experience of a lifetime." While deeply committed to that aspiration, Vail understands, like any customer-facing business, that it cannot control every variable that might affect a guest's experience. Despite Vail's best efforts, the weather, pandemics, and worker shortages—to name just a few—can impact its mountain resorts. And because consumers often buy passes months before the ski season, Vail cautions guests in advance that it cannot "make any guarantees" regarding resort access, operations, or "any particular guest experience." Before any guest can access a Vail resort, they must agree to Terms of Sale that acknowledge these risks and agree that their "sole remedy" for any later claims is through Vail's refund policy, not litigation. This lawsuit attempts to circumvent those Terms.

From December 27, 2024 through January 8, 2025, the Park City Professional Ski Patrol Association went on strike. While the remaining staff worked to keep Park City Mountain ("PCM")—the nation's largest ski resort—open during the peak holiday season, the combination of weather and the strike reduced the available terrain that PCM could open and maintain safely. As a result, guests regrettably experienced less available terrain and longer lift lines than usual.

One of those guests was Plaintiff Christopher Bisaillon, who purchased an Epic Pass that gave him unrestricted access during the 2024/2025 ski season to Vail's portfolio of thirty-seven North American mountain resorts, including PCM. Plaintiff skied at PCM on several days between December 28 and January 2. Displeased with his experience, he filed this putative class action, alleging that Vail "intentionally and willfully deceived" him when he purchased his Epic Pass in

April 2024 by "fail[ing] to disclose" that personnel would be "on strike" eight months later "during the Christmas and New Year's holiday season." Perhaps knowing that the Terms of Sale would bar a contract claim, Plaintiff recasts a breach claim as one for consumer deception, fraud, and unjust enrichment. As explained below, those theories fail for numerous reasons, including Plaintiff's agreement to bring any lawsuit as an *individual* action in Colorado, not a class action in Utah.

Further, Plaintiff was not deceived. Plaintiff bought his Epic Pass in April 2024. At that time, Vail could not have foreseen a labor strike eight months in the future. Nor would PCM have had any obligation to disclose a potential strike in the weeks before Plaintiff arrived, at which point the matter was being covered extensively by national news outlets. To the extent Plaintiff did "not experience the ski experience" he wanted, that complaint bespeaks a contract claim, not a fraud theory designed to bypass the Terms of Sale. Finally, Plaintiff expressly agreed to use Vail's refund policy as his "sole remedy" for claims "relate[d] to" the "operation of [Vail] resorts."

Vail regrets that Plaintiff did not have the ski experience he wanted over the holidays. PCM has apologized for the disruption caused by the ski patrol strike and, as a show of appreciation for its customers, voluntarily issued credits to compensate guests who skied or snowboarded during the strike. While Plaintiff can choose to decline Vail's credit offer, he cannot bring this lawsuit in this Court for these claims. The Court should dismiss.

## BACKGROUND

### A.        Plaintiff Purchased an Epic Pass and Agreed to Terms of Sale

Plaintiff lives in Illinois. Second Amended Complaint, Dkt. 37 ("Complaint" or "Compl.") at 3 ¶ 4.[1] He is an Epic Pass holder who first purchased a season pass in 2022. Declaration of Rick Wallace ("Decl."), Ex.5. Plaintiff enrolled in Vail's auto-renewal program, allowing him to purchase a new Epic Pass each year at a preferred rate.

On April 8, 2024, Plaintiff renewed his "Epic Season Pass" for the 2024/2025 ski season. Compl. ¶ 37 (referencing "Epic Pass" purchase); Decl. Ex.1. Plaintiff received the following confirmation by email:

> **CONFIRMATION: 443375768**
>
> ## CHRIS, THANK YOU FOR YOUR RECENT ORDER
>
> We received your order on April 8, 2024. All details can be found below. We can't wait to welcome you for your legendary trip to Vail.

Decl. Ex.1 at 2.[2] The confirmation reflects that Plaintiff paid the $49 down payment and received an "Epic Season Pass":

---

[1] Plaintiff's Complaint restarts the paragraph count at "4" after reaching paragraph "6." This motion adds page numbers where necessary to avoid confusion.

[2] On a motion to dismiss, a court may consider documents a plaintiff (1) attaches to the complaint; (2) incorporates by reference; or (3) referenced in and "central to her complaint and indisputably authentic." *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Plaintiff alleges that he "bought lift tickets through Vail Resort's 'Epic Pass,'" Compl. ¶ 37, thereby "referencing" his Epic Pass purchase. The Court also may consider the purchase *date* based on the "conspicuous *lack* of reference to" an indisputable fact. *Cowles v. Bonsai Design LLC*, 2020 WL 3036067, at *6 (D. Colo. June 5, 2020) (emphasis added). Plaintiff acknowledges that he bought his Epic Pass "in advance," Compl. ¶ 37, but conspicuously fails to mention that he bought it eight months *before* the date he alleges Vail concealed material information. The Court need not ignore an indisputable and dispositive timeline. *See Debora v. WPP Grp. PLC*, 1994 WL 177291, at *1 & n.2 (S.D.N.Y. May 5, 1994) (considering purchase dates where the plaintiff "appear[ed] to have purposefully failed to include" them to avoid dismissal).



*Id.* at 4.

When Plaintiff originally bought an Epic Pass in 2022, he accepted Vail's Terms of Sale. He was able to press the PURCHASE button only *after* clicking a box acknowledging that he "ha[d] reviewed and saved or printed the linked" Terms. *Id.* Ex.2 at 2. "By checking th[e] box and clicking PURCHASE," he thus "agree[d] and consent[ed] to the Terms and Conditions of Sale":



*Id.* Plaintiff also signed up for the auto-renewal feature. *Id.* Ex.1 at 5.

The relevant Terms in effect when Plaintiff purchased his 2024/2025 Epic Pass, *id.* Ex.3, are materially identical to the 2022/2023 Terms, *id.* Ex.4, and they "constitute a binding agreement

between [Plaintiff] and the Vail Corporation," *id.* Ex.3 at 2.[3] They apply to purchases of any "lift access product," including the "Season Pass" Plaintiff purchased and renewed.[4]

> **Last Updated**: March 5, 2024
>
> Please read these terms and conditions ("**Terms**") carefully. These Terms (in their entirety) constitute a binding agreement between you and the Vail Corporation, doing business as Vail Resorts Management Company, including its subsidiaries and affiliates ("**Vail Resorts**," "**we**" or "**us**"). By purchasing a Season Pass or other lift access product, including lift tickets, you, and any person on whose behalf you purchase a Season Pass or other lift access product, are agreeing to be bound by these Terms.

*Id.*

The Terms begin with the following "Advisory":

> **ADVISORY**
>
> SECTION **5** OF THESE TERMS REQUIRES YOU TO COMPLY WITH ALL PUBLIC HEALTH AND SAFETY ORDERS, REGULATIONS, LAWS, POLICIES, AND PROCEDURES APPLICABLE AT ANY RESORT YOU ACCESS, INCLUDING AGREEING TO ANY ATTESTATIONS SET FORTH IN SECTION **5** OR OTHERWISE PROVIDED.
>
> SECTION **15** OF THESE TERMS INCLUDES A FORUM SELECTION CLAUSE BY WHICH YOU WILL FORFEIT ANY RIGHTS YOU MAY HAVE TO SELECT A FORUM FOR LITIGATION RELATING TO OR ARISING OUT OF THESE TERMS OTHER THAN THE FORUM SPECIFIED IN THESE TERMS.
>
> SECTION **17** OF THESE TERMS INCLUDES A RELEASE BY WHICH YOU WILL FORFEIT CERTAIN CLAIMS YOU MAY HAVE AGAINST VAIL RESORTS, ITS AFFILIATES, ITS SUBSIDIARIES, OR ITS PARTNERS, INCLUDING A RELEASE OF ANY CLAIMS FOR NEGLIGENCE.
>
> SECTION **18** OF THESE TERMS INCLUDES LIMITATIONS OF LIABILITY BY WHICH YOU WILL FORFEIT ANY RIGHTS TO RECOVER CERTAIN TYPES OF DAMAGES.
>
> SECTION **20** OF THESE TERMS INCLUDES A CLASS ACTION AND JURY WAIVER BY WHICH YOU WILL FORFEIT ANY RIGHTS YOU MAY HAVE TO A JURY TRIAL OR TO BRING A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION RELATING TO OR ARISING OUT OF THESE TERMS.

---

[3] Despite the Complaint's "conspicuous lack of reference" to the Terms, the Court may consider them in deciding this motion. *Cowles*, 2020 WL 3036067, at *6. Where, as here, a plaintiff "artfully constructs [his] pleading to avoid mentioning" a controlling contract, in what "seems to be little more than a deliberate tactic to avoid dismissal," the contract "should be deemed 'mentioned' for purposes of [a] Rule 12 analysis." *Id.* In *Cowles*, the court considered a waiver in a zip-line ticket contract even though the customer "ma[de] no reference [in her complaint] to signing a waiver." *Id.* This Court should likewise deem the Terms "'mentioned' by [virtue of] their conspicuous *absence*." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2016 WL 8416760, at *8 (D. Colo. July 13, 2016). To hold otherwise would allow a plaintiff "with a deficient claim [to] survive a motion to dismiss simply by not attaching a dispositive document." *Cowles*, 2020 WL 3036067, at *7 (citation omitted).

[4] Decl. Ex.3 at 11-12 (providing that the "Auto-Renew Policy" is subject to the Terms).

*Id.* Ex.3 at 3 (all highlighting in original).

The first numbered paragraph describes Vail's "Resort Operations" and informs guests that Vail has "sole and absolute discretion" in operating its resorts, including "the right to modify, expand, reduce, or cease operations of any resorts, facilities, or amenities at any time and for any period of time":

> 1. **Resort Operations.** Vail Resorts has the right, in its sole and absolute discretion, to operate its resorts, facilities, and amenities in the manner it deems appropriate in its sole and exclusive judgment. Vail Resorts' right to operate in the manner it deems appropriate includes, but is not limited to, the right to modify, expand, reduce, or cease operations of any resorts, facilities, or amenities at any time and for any period of time, the right to implement, modify, expand, reduce, or cease any policies or procedures related to any resorts, facilities, or amenities or the use of your Season Pass or other lift access product, and the right to implement, modify, expand, reduce, or cease any reduced capacity or reservations systems or other requirements to use your Season Pass or other lift access product.

*Id.* Ex.3 at 4 ¶ 1.

Paragraph 2 confirms that buying a Season Pass provides "No Guarantee" of "access to any resorts, terrain, facilities, or amenities at any given time," "any particular guest experience," or any guest's "satisfaction with [the] guest experience":

> 2. **No Guarantee.** VAIL RESORTS DOES NOT MAKE ANY GUARANTEES WITH RESPECT TO ITS SEASON PASSES OR OTHER LIFT ACCESS PRODUCTS. For example, your purchase of any Season Pass or other lift access product does not guarantee: (a) access to any resorts, terrain, facilities, or amenities at any given time or for any number of days or for any minimum number of days; (b) any particular guest experience or your satisfaction with your guest experience at or with any resorts, facilities, or amenities; or (c) your ability to reserve any number of days or minimum number of days when Vail Resorts operates under a reduced capacity or reservation system. Your admission to any resorts, facilities, or amenities is subject to, among other things, capacity constraints and closures. Nothing in these Terms is a commitment by Vail Resorts to keep any resort, facilities, or amenities open for any particular period or amount of time and Vail Resorts reserves right to close any of its resorts, facilities, or amenities in its sole and absolute discretion. Vail Resorts is not obligated to sell you a Season Pass, a lift access product, or any other products or services and expressly reserves the right, in its sole and absolute discretion, to refuse to sell any products and services to you or any other person.

*Id.* Ex.3 at 4 ¶ 2.

The Terms also require that any suit "relating to" the Terms must be filed in Colorado and that Colorado law governs:

15. **Forum Selection.** All lawsuits relating to or arising out of these Terms will be brought in the Federal or State Courts located in Colorado. We and you hereby irrevocably submit to the exclusive personal jurisdiction of such courts for such purpose and waive any objection to such courts on any basis, including without limitation improper venue or inconvenience of the forum.

14. **Governing Law.** These Terms and the relationship between you and Vail Resorts will be governed by the laws of the State of Colorado in the same manner as such laws are applied to agreements made, entered into, and performed entirely in Colorado.

*Id.* Ex.3 at 6 ¶¶ 14, 15.

The Terms contain a "release" and "sole remedy" provision by which guests agree to waive "any and all claims" they "may have against Vail" that "relate to" or "arise out of" the "operation of [Vail] resorts" or the "inability to use [a] Season Pass or other lift access product during the season for which it was purchased." *Id.* Ex.3 at 7 ¶ 17c. The release provides that "[r]efunds" under a separate provision are a customer's "sole remedy" in those circumstances:

c.  **Release of Other Claims, Sole Remedy.** In addition to the Release under paragraph 17(b), you hereby voluntarily and knowingly agree, to the maximum extent permitted by applicable law, to waive, release, and forfeit any and all claims and actions you have or may have against Vail Resorts or any Vail Resorts Parties and any associated losses, damages and expenses (including attorneys' fees), that relate to, arise out of, or may arise out of the operation of our resorts or Partner Resorts, your inability to use your Season Pass or other lift access product during the season for which it was purchased, or a violation of these Terms or any of other terms or policies referenced herein. Refunds pursuant to Section 9 above, as applicable, are your sole remedy against any of the Vail Resorts Parties in connection with the operation of our resorts or Partner Resorts or your inability to use your Season Pass or other lift access product during the season for which it was purchased.

*Id.*

The Terms also provide that Vail cannot be liable for damages "as a result of" the "operation of [Vail] resorts," or the "use of or inability to use any season pass":

> 18. **Limitation of Liability.** YOU UNDERSTAND AND AGREE THAT TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, IN NO EVENT WILL ANY OF THE VAIL RESORTS PARTIES BE LIABLE UNDER ANY THEORY OF LIABILITY (WHETHER IN CONTRACT, TORT, STATUTORY, OR OTHERWISE) FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, PERSONAL INJURY/WRONGFUL DEATH, PUNITIVE, OR EXEMPLARY DAMAGES (EVEN IF SUCH PARTIES WERE ADVISED OF, KNEW OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES), INCLUDING BUT NOT LIMITED TO AS A RESULT OF: (A) THE OPERATION OF OUR RESORTS OR PARTNER RESORTS, INCLUDING THE OPERATION OF RESERVATION OR REDUCED CAPACITY SYSTEMS, (B) YOUR USE OF OR INABILITY TO USE ANY SEASON PASS OR OTHER LIFT ACCESS PRODUCT, OR (C) ANY VIOLATION BY US OF THESE TERMS OR OTHER TERMS OR POLICIES REFERENCED HEREIN, INCLUDING THE EPIC COVERAGE REFUND POLICY OR LIFT TICKET REFUND POLICY. NOTWITHSTANDING THE FOREGOING, SUCH LIABILITY WILL NOT IN THE AGGREGATE EXCEED THE AMOUNT YOU PAID FOR THE SEASON PASS OR OTHER LIFT ACCESS PRODUCT YOU PURCHASED.

*Id.* Ex.3 at 8 ¶ 18.

Finally, guests agree they will not bring any class action lawsuit against Vail for disputes "relating to" the Terms:

> 20. **Class Action and Jury Waiver.** YOU MAY ONLY RESOLVE DISPUTES RELATING TO OR ARISING OUT OF THESE TERMS ON AN INDIVIDUAL BASIS AND MAY NOT BRING AND EXPRESSLY WAIVE THE RIGHT TO BRING A CLAIM AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION. CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER ACTIONS ARE NOT ALLOWED. YOU HEREBY WAIVE YOUR RIGHT TO A JURY TRIAL IN ANY CLAIM OR CAUSE OF ACTION RELATING TO OR ARISING OUT OF THESE TERMS.

*Id.* Ex.3 at 8-9 ¶ 20.

### B.    The Ski Patrol Strike

In December 2024, Vail was engaged in labor negotiations with the Park City Professional Ski Patrol Association. The negotiations were widely covered in the news and, on December 16, the Salt Lake Tribune published a story highlighting that "[m]embers of the union representing the Park City Ski Patrol authorized a strike over the weekend, potentially putting Park City Mountain's holiday operations in jeopardy." Julie Jag, *Park City Patrollers Authorize Strike, Could Affect Holiday Skiing*, The Salt Lake Trib. (Dec. 16, 2024), https://bit.ly/4bsjCq1. On December 20, the Tribune published another story stating the union had filed labor complaints against Vail. Kristine

Weller, *Park City Mountain Ski Patrol Union Files Unfair Labor Practice Complaints Against Vail*, The Salt Lake Trib. (Dec. 20, 2024), https://bit.ly/3FxMIs8.

On December 27, 2024, eight months after Plaintiff renewed his Epic Pass, the ski patrol went on strike. Compl. ¶ 16. Plaintiff alleges that because the "Union had filed multiple complaints with the National Labor Relations Board as early as December 16," Vail "knew or reasonably should have known" by then "that a strike was coming." *Id.* ¶¶ 17-18. The strike ended on January 8, 2025. Mead Gruver, *Ski Patrollers Reach Deal to End Strike at Utah's Park City Mountain Resort*, Associated Press, (Jan. 8, 2025), https://tinyurl.com/4ps4mm9.

The next day, Plaintiff filed this putative class action, alleging that Vail "intentionally and willfully deceived" him by purportedly "fail[ing] to disclose" that personnel would be "on strike during the Christmas and New Year's holiday season of 2024/2025." Dkt. 1 ¶ 1; Compl. ¶ 1. According to Plaintiff, he "and the putative class [did] not experience the ski experience that was promised." Compl. ¶ 66. Plaintiff brings three causes of action: (1) a violation of the Utah Consumer Sales Practices Act (UCSPA); (2) fraudulent nondisclosure; and (3) unjust enrichment.

## LEGAL STANDARDS

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Rule 9(b) "requires that allegations of fraud be pled with particularity," *Jackson v. Philip Morris Inc.*, 46 F. Supp. 2d 1217, 1222 (D. Utah 1998), including "the who, what, when, where and how of alleged fraudulent behavior," *Marcovecchio v. Wright Med. Grp., Inc.*, 2019 WL 1406606, at *8 (D. Utah Mar. 28, 2019) (cleaned up). These requirements apply to "fraudulent nondisclosure" and "fraudulent concealment," *Linford v. First Franklin*, 2011 WL 5508826, at *3 (D. Utah Nov. 9, 2011), to UCSPA claims that "arise[] out of allegations of deception, false misrepresentations and omissions," *Jackson*, 46 F. Supp. 2d at 1222, and to "claims for unjust

enrichment … [that] are based almost entirely on allegations of fraud," *Storey v. Seipel*, 2024 WL 4436609, at *6 (D. Utah Oct. 24, 2024).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1103 n.4 (D. Colo. 2022) (citation omitted). This includes "evidence of a forum-selection clause." *Hayes v. Facebook*, 2019 WL 8275335, at *2 (D. Colo. Mar. 6, 2019).

## ARGUMENT

### I.    THE TERMS OF SALE BAR PLAINTIFF FROM SUING OUTSIDE OF COLORADO OR BRINGING A CLASS ACTION

The Court should dismiss or transfer this case because Plaintiff (A) agreed to file exclusively in Colorado, and (B) voluntarily waived the right to bring a class action.

### A.    Plaintiff Agreed to File any Claims in Colorado

The parties' forum selection clause requires "[a]ll lawsuits relating to or arising out of the[] Terms [to] be brought in the Federal or State Courts located in Colorado." Decl. Ex.3 at 6 ¶ 15. A valid "forum-selection clause should be given controlling weight in all but the most exceptional cases." *Gossling v. Exxon Mobil*, 2021 WL 12314077, at *1 (D. Utah July 7, 2021) (cleaned up). "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (cleaned up).

Courts enforce forum-selection clauses even when "the contract containing the clause is raised only as a defense, rather than on the face of the complaint." *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1093 (10th Cir. 2019). Thus, a forum-selection clause cannot "be defeated by artful pleading of claims." *Id.* at 1094. To hold otherwise would dilute the very purpose of forum-selection clauses and waste judicial and party resources. Moreover, "[w]hen reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings." *Dupray*, 645 F. Supp. 3d at 1103 n.4 (citation omitted); *Hayes*, 2019 WL 8275335, at *2.

### 1.    The Forum Selection Clause Is Valid and Mandatory

Plaintiff agreed to bring any claims in Colorado:

> 15. **Forum Selection.** All lawsuits relating to or arising out of these Terms will be brought in the Federal or State Courts located in Colorado. We and you hereby irrevocably submit to the exclusive personal jurisdiction of such courts for such purpose and waive any objection to such courts on any basis, including without limitation improper venue or inconvenience of the forum.

Decl. Ex.3 at 6 ¶ 15. This provision is unambiguous and mandatory.

Plaintiff's claims indisputably "relate to" the Terms. A claim "relates to" a subject matter "if it has a connection with or reference to" it. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "[A] tort claim 'relates to' a contract if it is connected by reason of an established or discoverable relation between the tort and the contract." *Oceanside Ten Holdings.com, LLC v. Mktg, Inc.*, 2018 WL 2277004, at *2 (D. Colo. May 18, 2018) (cleaned up). "Thus, if there is any 'discoverable relation' between the [contract] and the claims asserted in the [complaint], the Forum Selection Clause requires such claims to be brought in Colorado." *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 148 F. Supp. 3d 1169, 1178 (D. Colo. 2015). For instance, when a complaint asserts that the plaintiff "would not have entered into an agreement if [he] had" known information the defendant allegedly misrepresented, "the injury that underlies the [plaintiff's] tort claims" ultimately "relates to" the agreement. *Oceanside*, 2018 WL 2277004, at *2.

That is exactly what Plaintiff alleges here. He acknowledges that he "bought lift tickets through Vail Resort's 'Epic Pass'" and defines the putative class as "[a]ll persons who purchased a lift ticket or any 'Epic Pass' package." Compl. ¶¶ 37, 45. According to Plaintiff, he "would have acted differently in purchasing and/or using the lift tickets" had he known about the strike. *Id.* ¶ 70. The Terms of Sale, which contain the forum selection clause, advised Plaintiff that "[b]y purchasing a Season Pass or other lift access product, including lift tickets," he "agree[d] to be bound by these Terms." Decl. Ex. 3 at 2.

The Terms, in fact, expressly "relate to" Plaintiff's claims. They give Vail "the right, in its sole and absolute discretion, to operate its resorts, facilities, and amenities in the manner it deems appropriate in its sole and exclusive judgment," and they clarify that an Epic Pass "does not guarantee: (a) access to any resorts, terrain, facilities, or amenities at any given time," or "(b) any particular guest experience or [purchaser's] satisfaction with [the] guest experience at or with any resorts, facilities, or amenities." *Id.* at 4 ¶¶ 1-2. Plaintiff's claim—that he did not receive "the ski experience that was promised," Compl. ¶¶ 66, 68, 73—plainly "relates to" these provisions.

## 2.    The Forum Selection Clause Is Enforceable

Faced with a transfer motion based on a mandatory forum selection clause, a plaintiff "bears the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 67 (2013). It is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Adams Reload Co. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1060 (Colo. App. 2005). Plaintiff makes no allegations to support such a showing.

While Plaintiff alleges he was fraudulently induced to purchase an Epic Pass, he does not suggest he was fraudulently induced to *select Colorado as a forum*. This matters, because "voiding

a mandatory forum selection clause requires" the plaintiff to "plead fraud going to the specific provision." *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014). A plaintiff must allege "that the forum selection clause *itself* was based on fraudulent inducement or misrepresentation." *Bowers v. Tension Int'l, Inc.*, 2016 WL 3181312, at *3 (D. Colo. June 8, 2016) (emphasis added). "If that were not true, then parties could defeat almost any forum selection clause, simply by making bare allegations of fraud as to the underlying agreement." *Id.* Because the forum selection clause applies, the Court should dismiss or transfer this case.

### B.    Plaintiff Waived His Ability to Bring a Class Action Lawsuit

The Complaint also must be dismissed because Plaintiff voluntarily waived his right to bring a class action. "The enforceability of a procedural device, like a class action waiver, should be resolved at this stage of the litigation by way of a motion to dismiss." *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1345 (S.D. Fla. 2017). Courts enforce class action waivers at the pleading stage even when the complaint fails to mention the contract containing the waiver, because "[a] plaintiff's failure to refer to such documents raises the spectre that [the] plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal." *Birdsong v. AT & T Corp.*, 2013 WL 1120783, at *2 (N.D. Cal. Mar. 18, 2013) (cleaned up). "[C]ollective or class action waivers are not substantively unconscionable" and thus should be enforced according to their terms. *E.g.*, *Lewis v. Eassit, Inc.*, 2023 WL 2522812, at *3 (D. Utah Mar. 15, 2023). Courts regularly dismiss putative class action complaints based on contractual class action waivers.[5]

---

[5] *See, e.g.*, *Roman v. Spirit Airlines, Inc.*, No. 20-13699, 2021 WL 4317318, at *2-3 (11th Cir. Sept. 23, 2021); *Zako v. Hamilton Co.*, 2019 WL 320552, at *3 (D. Nev. Jan. 23, 2019); *DeLuca*, 244 F. Supp. 3d at 1349; *Birdsong*, 2013 WL 1120783, at *6; *Lu v. AT & T Servs., Inc.*, 2011 WL 2470268, at *3 (N.D. Cal. June 21, 2011).

Plaintiff agreed that he would not bring any class action lawsuit against Vail for disputes "relating to" the Terms:

> 20. **Class Action and Jury Waiver.** YOU MAY ONLY RESOLVE DISPUTES RELATING TO OR ARISING OUT OF THESE TERMS ON AN INDIVIDUAL BASIS AND MAY NOT BRING AND EXPRESSLY WAIVE THE RIGHT TO BRING A CLAIM AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION. CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER ACTIONS ARE NOT ALLOWED. YOU HEREBY WAIVE YOUR RIGHT TO A JURY TRIAL IN ANY CLAIM OR CAUSE OF ACTION RELATING TO OR ARISING OUT OF THESE TERMS.

Decl. Ex.3 at 8-9 ¶ 20. As explained above, his claims indisputably "relate to" the Terms. *Supra* I.A.1. Despite this waiver, Plaintiff attempts to bring this case "as a class action." Compl. ¶ 45. Because Plaintiff waived the right to bring this case as a class action and his only asserted basis for jurisdiction is the Class Action Fairness Act, *id.* at 4 ¶ 6, the Court should dismiss.

## II.    PLAINTIFF FAILS TO STATE A CLAIM

The Complaint also fails to state claims for violations of the UCSPA, fraudulent nondisclosure, and unjust enrichment.

### A.    The Complaint Fails to State a UCSPA Claim

The Complaint fails to state a UCSPA claim because (1) the statute bars class actions seeking monetary damages under these circumstances, (2) the choice-of-law clause in the Terms of Sale prevents suits under Utah law, and (3) Plaintiff fails to identify a deceptive or unconscionable sales practice.

#### 1.    Plaintiff Cannot Pursue Class Claims Under the UCSPA

"Class actions claims are significantly limited under the UCSPA." *Matchett v. BSI Fin. Servs.*, 2021 WL 3473062, at *2 (D. Utah Aug. 6, 2021), *aff'd*, No. 21-4142, 2023 WL 4678683 (10th Cir. July 21, 2023). The statute "permits a class action for damages only where the act or practice that is alleged to violate the UCSPA has been:"

1. "Specified as violating the UCSPA by a substantive rule adopted by the Utah Division of Consumer Protection;"

2.  "Declared to violate Sections 4 or 5 of the UCSPA by a final judgment of the appropriate court reported 10 days before the consumer transactions on which the action is based;" or

3.  "prohibited specifically by the terms of a consent judgment which became final before the consumer transactions on which the action is based."

*Id.* (quoting Utah Code § 13-11-19(4)(a)). "In short, class actions seeking money damages are available only when a supplier's actions violate an existing administrative rule, court order, or consent decree." *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1282 (D. Utah 2020). "Unless one of the three situations is present, a consumer is not permitted to pursue a class action under the UCSPA for actual or statutory damages." *Matchett*, 2021 WL 3473062, at *2.

The Complaint meets none of those criteria. Plaintiff does not allege that Vail's "actions violate an existing administrative rule, court order, or consent decree." *Johnson*, 500 F. Supp. 3d at 1282. Thus, Plaintiff "is not permitted to pursue a class action under the UCSPA for actual or statutory damages." *Matchett*, 2021 WL 3473062, at *2. His UCSPA class action claim must be dismissed. *See id.* (dismissing class claim under UCSPA); *Callegari v. Blendtec, Inc.*, 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018) (same); *Johnson*, 500 F. Supp. 3d at 1282 (same).

### 2.    The Choice-of-Law Clause Bars Plaintiff's UCSPA Claim

Plaintiff's UCSPA claim also must be dismissed because the choice-of-law clause in the Terms of Sale provides that "the relationship between [him] and Vail Resorts will be governed by the laws of the State of Colorado," Decl. Ex.3 ¶ 14—not Utah consumer protection law.

When a choice-of-law clause selects one jurisdiction's law, a plaintiff cannot sue under a different jurisdiction's consumer protection statute.[6] "To decide the effect of the contractual

---

[6] *See, e.g.*, *Overturf v. Rocky Mountain Chocolate Factory, Inc.*, 2008 WL 11334952, at *5 (C.D. Cal. Oct. 27, 2008) (applying Colorado choice-of-law clause to bar California consumer protection claims); *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*, 166 F. Supp. 3d 684, 694 (E.D. La. 2016) (similar); *Cook v. Gen. Nutrition Corp.*, 2017 WL 4340664, *12 (W.D. Pa. Sept. 29, 2017) (applying "well-settled law" that "a claim under an out-of-state consumer

choice-of-law clause," courts in the Tenth Circuit "look to the forum state's choice-of-law rules." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007). "In Utah, courts generally uphold choice-of-law provisions based on the intent of the contracting parties and a respect of the parties' right to choose the governing law for a contract." *Riverbend Ranch Equestrian Ctr. LLC v. Duvall*, 2017 WL 4325798, at *2 (D. Utah Sept. 27, 2017) (cleaned up). A choice-of-law clause governs "unless one of two exceptions applies:" (1) the selected jurisdiction's law "has no substantial relationship to the parties or the transaction," or (2) that jurisdiction's "law would be contrary to a fundamental policy of Utah." *Id.* at *3.

Vail is headquartered in Colorado, Compl. at 4 ¶ 5, so Colorado law has a "substantial relationship to the parties." *Duvall*, 2017 WL 4325798, at *2. And Colorado has its own consumer protection statute, Colo. Rev. Stat. § 6-1-105, so Colorado law is not "contrary to a fundamental policy of Utah," *Duvall*, 2017 WL 4325798, at *3. The Colorado choice-of-law clause therefore bars Plaintiff's UCSPA claim.

### 3.    The Complaint Fails to Allege a Deceptive or Unconscionable Act

Even if Plaintiff could overcome the threshold barriers to his UCSPA claim (he cannot), he fails to state a claim. While he alleges that Vail concealed the strike when he bought his Epic Pass, that was eight months *before* any strike was even contemplated. And his theory that Vail somehow deceived him into *using* his Epic Pass at PCM fails several times over.

The UCSPA creates a cause of action for certain acts that are "deceptive," Utah Code § 13-11-4, or "unconscionable," *id.* § 13-11-5. To plead deception, "a plaintiff must allege that (1) a supplier (2) in connection with a consumer transaction (3) knowingly or intentionally (4) engaged

---

protection statute may not be asserted when the parties have contractually agreed that Pennsylvania law applies to their relationship"); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D.N.Y. 2016) (similar).

in a deceptive act or practice." *Cordero v. Olson Assocs. P.C.*, 2024 WL 3401056, at *9 (D. Utah July 12, 2024) (cleaned up). Unconscionability requires allegations of "facts that would rise to the level of 'extreme unfairness.'" *Cotte v. CVI SGP Acquisition Tr.*, 2022 WL 464307, at *10 (D. Utah Feb. 15, 2022).

**No Deception.** Plaintiff alleges that Vail "intentionally and willfully deceived" him when he purchased his Epic Pass because Vail supposedly "failed to disclose" that personnel would be "on strike during the Christmas and New Year's holiday season of 2024/2025." Compl. ¶ 1. Paradoxically, he asserts that Vail "kn[ew] since December 16, 2024[] that a ski patrol strike was unavoidable." *Id.* ¶ 19. Plaintiff cannot credibly allege that, when he purchased his Epic Pass in April 2024, Vail should have disclosed information that would not be known for another eight months.

Regardless, Plaintiff fails to plead the "particular details regarding time … of the alleged fraudulent concealment" and thus fails to satisfy Rule 9(b). *P.R. v. Zavaras*, 49 F. App'x 836, 840 (10th Cir. 2002); *Callegari*, 2018 WL 5808805, at *5 (dismissing UCSPA claim where "[d]ates and times of the allegedly misleading statements at issue [were] absent from the Complaint"); *Anderson v. Logitech, Inc.*, 2018 WL 1184729, at *3 (N.D. Ill. Mar. 7, 2018) (dismissing concealment claim because the plaintiff "[did] not disclose the date he purchased" the product, "a significant failure when considering Rule 9(b)").

As to Plaintiff's claim that Vail "allow[ed]" him "to use" his Epic Pass "with the indication that [he] would have full access to all ski runs and chair lifts," Compl. ¶ 61, he cannot get around the Terms of Sale. The Terms notified Plaintiff that his "admission to any resorts, facilities, or amenities [was] subject to, among other things, capacity constraints and closures." Decl. Ex. 3 at 4 ¶ 2. Plaintiff expressly agreed there was no guarantee that purchasing a season pass would ensure

17

"access to any resorts, terrain, facilities, or amenities at any given time," "any particular guest experience," or his "satisfaction with [his] guest experience." *Id.* And Plaintiff agreed that Vail cannot be liable for damages "as a result of" the "operation of [Vail] resorts" or the "use of or inability to use any season pass or other lift access product." *Id.* at 8 ¶ 18. The UCPSA allows for claims where the defendant "fails to honor a warranty or a particular warranty term," Utah Code Ann. § 13-11-4(2)(j)(ii)—but it does not allow for liability where, as here, the purchaser expressly agrees that no such warranty exists.[7]

***No Unconscionability.*** Plaintiff's "unconscionability" claim also fails. "[T]he standard for proving unconscionability is high." *Cotte*, 2022 WL 464307, at *10 (citation omitted). "[T]o succeed on a claim alleging an unconscionable act or practice, a party's complaint may not merely allege the same conduct that is at issue in a claim for deceptive conduct—more is required." *Fell v. Alco Cap. Grp. LLC*, 538 P.3d 1249, 1258 (Utah Ct. App. 2023). A plaintiff may not "simply repackage[] [the] [d]efendants' allegedly deceptive conduct and call[] it unconscionable." *Cotte*, 2022 WL 464307, at *10 (cleaned up).

Plaintiff fails to meet that standard. He merely asserts that "Defendant's conduct was unconscionable." Compl. ¶ 62. Because "Defendant's conduct" is a reference to "the same conduct that is at issue in [Plaintiff's] claim for deceptive conduct," *Fell*, 538 P.3d at 1258, it is an improper attempt to "simply repackage[] [the] allegedly deceptive conduct and call[] it unconscionable," *Cotte*, 2022 WL 464307, at *10 (cleaned up), and dismissal is warranted.

---

[7] And as discussed below, the potential strike was extensively covered in both local and national news, so Vail did not "conceal" it from Plaintiff. *See infra* II.B.2.b.

### B.    The Complaint Fails to State a Fraud Claim

Plaintiff also fails to adequately allege fraud. "To prevail on a claim for fraudulent nondisclosure, a plaintiff must demonstrate, inter alia, that the defendant failed to disclose a past or present fact that he or she had a duty to disclose, with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken, and that plaintiff justifiably relied on the omission." *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002). Plaintiff alleges that because Vail did not "advise [him] … about the Ski Patrol Strike," he (1) purchased an Epic Pass, and (2) used it at PCM over the holidays. Compl. ¶ 66. Both theories fail.

### 1.    Plaintiff's Pre-Contract "Purchase" Theory Fails

Plaintiff alleges that Vail's nondisclosure of the strike "was material to the transaction" of his "purchasing" his Epic Pass. *Id.* ¶ 68. But Vail learned about the strike in December, *see id.* ¶ 19, eight months after Plaintiff's purchase. Thus, Plaintiff fails to allege that Vail fraudulently induced him to purchase his pass. *See Beckley v. Skarupa*, 2016 WL 374485, at *6 (D. Colo. Feb. 1, 2016) (dismissing fraud claim that did not allege defendant "even knew" the information "at the time" of the alleged concealment). Having failed to allege any withheld "past or present fact," *Wisehart*, 49 P.3d at 1204, for purposes of Rule 9(b), the Complaint must be dismissed, *see Marcovecchio*, 2019 WL 1406606, at *8.

### 2.    Plaintiff's Post-Contract "Use" Theory Fails

Plaintiff also contends that, in "using" his Epic Pass, he did not receive "the ski experience that was promised." Compl. ¶¶ 66, 58. This theory fails for multiple reasons.

#### a.    Vail Was Not Required to Disclose the Strike

"For a defendant to be liable for fraudulent concealment, a plaintiff must show that the defendant had a duty to disclose material information." *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1303 (10th Cir. 2022) (cleaned up). "Whether there is a duty to disclose a fact is a

question of law." *Id.* "In determining whether there is a duty to disclose, Colorado courts have looked to the Restatement (Second) of Torts § 551 for guidance." *Id.*

Section 551 provides that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose [material information] to the other *before* the transaction is consummated," *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) (emphasis added) (quoting Restatement (Second) of Torts § 551(2)(e) (1977)); that is, "*only* before the transaction is completed," *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*, 2014 WL 4400764, at *13 (D. Colo. Sept. 5, 2014) (emphasis added); *see Renfro*, 25 F.4th at 1303 (applying rule to a consumer purchase). If "the alleged nondisclosure occur[s] *after* the transaction ha[s] become consummated and deal[s] with performance (or lack thereof) of the transaction," then there is no duty to disclose for purposes of a fraudulent concealment claim. *Hayek v. Bank of Am. Home Loans*, 2013 WL 11521926, at *7 (D. Wyo. Dec. 13, 2013).

Here, the "transaction [was] consummated" on April 8, 2024, when Plaintiff purchased his Epic Pass. *Mallon*, 965 P.2d at 111 (citation omitted). When Vail allegedly became aware on "December 16, 2024[] that a ski patrol strike was unavoidable," Compl. ¶ 19, its "alleged nondisclosure" of that information necessarily "occurred *after* the transaction had become consummated," *Hayek*, 2013 WL 11521926, at *7. Thus, Plaintiff's complaint "deal[s] with performance (or lack thereof) of the transaction," *id.*, not a tort "duty to exercise reasonable care to disclose," *Mallon*, 965 P.2d at 111 (citation omitted). This pleading defect requires dismissal even without considering the Terms of Sale.

Vail also would not have had a duty to advise Plaintiff that PCM was operating at reduced capacity, because the Terms expressly allocate that risk. "If the parties expressly or impliedly place the risk as to the existence of a fact on one party," then "the other party has no duty of disclosure."

Restatement (Second) § 551 cmt.j. So, when "[p]laintiffs expressly place[] the risk as to the existence of facts on themselves," defendants "ha[ve] no duty to disclose because [the] [p]laintiffs assume[] the risk as to the existence of [those] facts." *In re Archibald*, 482 B.R. 378, 393 (Bankr. D. Utah 2012).

Plaintiff assumed the risk of "capacity constraints and closures" by agreeing to the Terms. Decl. Ex.3 at 4 ¶ 2. Plaintiff purchased a season pass granting him access to all of Vail's resorts; but he did not purchase a guarantee that every single resort would maintain peak operations at all times. On the contrary, Plaintiff expressly disclaimed any such "[g]uarantee." *Id.* at 4 ¶¶ 1-2.

Further, Plaintiff agreed that Vail's "[r]efunds" policy would provide his "sole remedy" for "any and all claims" that "relate to" or "arise out of" the "operation of [Vail] resorts" or the "inability to use [a] Season Pass or other lift access product during the season for which it was purchased." *Id.* at 7 ¶ 17. Again, "the phrase 'relating to' is broad." *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009). Thus, Plaintiff's claims fall under the "sole remedy" provision. Because Plaintiff "agree[d] to be bound by the[] Terms," Decl. Ex.3 at 2, he "expressly placed the risk" of reduced resort operations on himself, so Vail "had no duty to disclose" that one of its resorts was operating at reduced capacity. *Archibald*, 482 B.R. at 393.

### b. The Complaint Fails to Adequately Allege Justifiable Reliance

Plaintiff fails to adequately allege that, in electing to use his Epic Pass at PCM over the holidays, he justifiably relied on a supposed "promise[]" about PCM's operations. Compl. ¶ 66. "To win a claim for fraudulent concealment, the plaintiff must also show its reliance on the defendant's misrepresentation was justifiable." *Stewart Title Guar. Co. v. Dude*, 708 F.3d 1191, 1193 (10th Cir. 2013). "[I]f a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a

false representation." *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012). "[P]ublic documents" are "precisely that kind of information." *Id.*

Plaintiff alleges that "as early as December 16, 2024," Vail should have anticipated "that a strike was coming." Compl. ¶ 18. But by then—and certainly by the time Plaintiff left for PCM around December 27, *id.* ¶ 36—the potential strike was extensively covered in both local and national news. On December 16, for example, the Salt Lake Tribune ran a story titled "Park City patrollers authorize strike, could affect holiday skiing." *See* Jag, *supra*. The very first line was: "Members of the union representing the Park City Ski Patrol authorized a strike over the weekend, potentially putting Park City Mountain's holiday operations in jeopardy." *Id.* Indeed, Plaintiff's basis for claiming that Vail "should have known that a strike was coming" is that the "Union had filed multiple complaints with the National Labor Relations Board." Compl. ¶¶ 17-18. But the very *title* of a subsequent Salt Lake Tribune story, published before Plaintiff came to Utah, cautioned that the "Park City Mountain ski patrol union file[d] unfair labor practice complaints against Vail." *See* Weller, *supra*. Vail had no duty to disclose this major news story, and Plaintiff cannot have justifiably relied on any supposed failure to disclose the possibility of a strike.

Further, in agreeing to the Terms of Sale, Plaintiff expressly disclaimed any such reliance. "Under Colorado law, clear and specific language disclaiming reliance on a defendant's representations can preclude claims for fraudulent misrepresentation and concealment and negligent misrepresentation." *Cahey v. Int'l Bus. Machs. Corp.*, 2020 WL 5203787, at *10 (D. Colo. Sept. 1, 2020) (cleaned up). In *Cahey*, an IBM employee (Cahey) sued IBM when it refused to pay her a commission on one of her deals in accordance with her compensation plan, instead invoking "a 'hidden' criterion known only to IBM" that allowed IBM to cap commissions. *Id.* at *2, *9. Although Cahey alleged that IBM had "purposefully withheld" this cap from employees,

the court dismissed her claim because her compensation was subject to a provision in an "Incentive Plan Letter" that gave IBM "<u>sole discretion</u>" over employee commissions. *Id.* at *9-10 (quoting provision). "[I]n light of the express disclaimer in the IPL," Cahey did "not sufficiently plead facts to allow a factfinder to conclude that she justifiably relied upon IBM's silence to mean that sales commissions would not be capped or could not be reversed." *Id.* at *10.

Here, similarly, the Terms of Sale give Vail "sole and absolute discretion[] to operate its resorts, facilities, and amenities in the manner it deems appropriate in its sole and exclusive judgment," including "to modify, expand, reduce, or cease operations of any resorts." Decl. Ex.3 at 4 ¶ 1. And as discussed above, Plaintiff agreed that the "purchase of [his] Season Pass" did "not guarantee" him "access to any resorts, terrain, facilities, or amenities at any given time," nor "any particular guest experience." *Id.* at 4 ¶ 2. The Terms plainly conveyed to Plaintiff that Vail did *not* promise a given ski experience or that particular resorts would remain fully operational at all times. *Id.* at 3 ¶¶ 1-2; *id.* at 6-7 ¶¶ 17-18. Plaintiff thus could not have "justifiably" relied on a belief that PCM (or any Vail resort) would always be fully operational. *Cf. McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1156 (10th Cir. 2023) (holding "the no-refund clause" on Vail's website meant customers "could not have been reasonably misled or deceived into believing Vail would provide refunds").

### C.    The Complaint Fails to State an Unjust Enrichment Claim

Plaintiff also fails to state a claim for unjust enrichment. "[Q]uasi-contractual remedies such as [unjust enrichment] are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997). Thus, "[a] party generally cannot recover for unjust enrichment … where there is an express contract addressing the subject of the alleged obligation to pay." *McAuliffe*, 69 F.4th at 1153 (citation omitted). This rule applies even when the contract "does not provide [the plaintiffs with] the relief they seek." *Id.* at 1154.

The Terms of Sale "regulate[] the relations of the parties with respect to the disputed issue." *Member Servs.*, 130 F.3d at 957. Plaintiff bases his unjust enrichment claim on experiencing limited operations and long wait times after having "conferred a benefit to Defendant in paying full price" for his Epic Pass. Compl. ¶ 73. But the Terms provide that Plaintiff must use Vail's refund policy as his "sole remedy" for claims "as a result of" the "operation of [Vail] resorts" or the "use of or inability to use any season pass or other lift access product." Decl. Ex.3 at 7-8 ¶¶ 17-18. And the Terms expressly disclaim any guarantee that purchasing a season pass would ensure "access to any resorts, terrain, facilities, or amenities at any given time," "any particular guest experience," or any guest's "satisfaction with [the] guest experience." *Id.* at 4 ¶ 2. Indeed, the Terms notified Plaintiff that his "admission to any resorts, facilities, or amenities [was] subject to, among other things, capacity constraints and closures." *Id.* Because the contractual Terms "address[] the subject of the alleged obligation to pay," Plaintiff's unjust enrichment claim must be dismissed. *McAuliffe*, 69 F.4th at 1153 (citation omitted).

## D.    The Economic Loss Rule Bars Plaintiff's Tort Claim

Lastly, Plaintiff's tort theories run afoul of the economic loss rule. Under that rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1154 (citation omitted). "In considering the applicability of the economic loss rule, [courts] examine whether the alleged wrongful conduct occurred before or after the parties entered into their contract." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 120 (Colo. App. 2021). Alleged "fraud occurring during the parties' performance of their contract is post-contractual and may be barred by the economic loss rule." *Id.* Thus, the rule preserves "the carefully and expressly drawn allocations of risks, duties, and remedies for which [the parties] bargained." *Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1233 (Colo. App.

2012). For example, once two parties agree to a contract, one party's "false statement that it was performing an obligation imposed by [the contract]" does not violate "any duty independent of that contract[,] and the economic loss rule applies." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. App. 2011).

   ***The Terms of Sale Bar Plaintiff's Claim.*** Under the economic loss rule, a plaintiff "may not recover under a tort theory damages expressly excluded under the contract." *Dream Finders*, 506 P.3d at 124. This rule "applies to fraud and negligence claims alike." *Id.* at 125. "Indeed, the economic loss rule precludes contract cases from being recast as tort cases in order to escape the limitations that the law has placed on suits for breach of contract." *Warner v. Nutrien, Ltd.*, 2018 WL 6528137, at *8 (D. Colo. Dec. 12, 2018) (cleaned up). When a contract "expressly bar[s] purchasers … from recovering certain categories of damages," those purchasers cannot recover such damages for alleged fraud that occurs *after* the contract is formed. *Dream Finders*, 506 P.3d at 125.

   The Terms bar Plaintiff's request for consequential damages "as a result of" the "operation of [Vail] resorts" and the "use of or inability to use any season pass or other lift access product." Decl. Ex.3 at 8 ¶ 18. Because the Terms "bar[] [Plaintiff] from recovering the very category of damages" he "seek[s] to recover through [his] tort claim[]," "[n]ot allowing [him] to recover damages expressly excluded in the contract furthers the rationale of the economic loss rule." *Dream Finders*, 506 P.3d at 125-26. Thus, the economic loss rule bars Plaintiff's tort theories.

   ***The Economic Loss Rule Applies Even Absent the Terms of Sale.*** Even without the Terms, Plaintiff's purchase still was a contractual exchange, and the economic loss rule still bars his tort claims. Courts "consider three factors" in determining whether to apply the rule: "(1) whether the relief sought in the tort claim is the same as the contractual relief; (2) whether

there is a recognized common law duty in tort; and (3) whether the tort duty differs in any way from the contractual duty." *Top Rail Ranch Est., LLC v. Walker*, 327 P.3d 321, 328 (Colo. App. 2014). All three factors support applying the rule here.

*First*, "[c]onsequential damages are equally recoverable in contract and tort claims." *Dream*, 506 P.3d at 121. Plaintiff seeks consequential damages under a theory that he did not "experience the ski experience that was promised," Compl. ¶ 66—inherently contractual relief.

*Second*, as discussed above, a party to a contract has no general tort duty to disclose information "*after* [a] transaction ha[s] become consummated." *Hayek*, 2013 WL 11521926, at *7. Plaintiff's *post*-purchase theory thus does not implicate a duty to disclose.

*Third*, even if a disclosure duty persisted "after [the parties have] entered into [a] contract, such duty [can be] subsumed within the contract through the implied duty of good faith and fair dealing," which "applies when one party has discretionary authority to determine certain terms of the contract." *Dream Finders*, 506 P.3d at 123 (cleaned up). Therefore, breach of the implied covenant through a post-contract misrepresentation "support[s] a claim for breach of contract but not a tort claim." *Id.* Even if Vail had a post-contract *tort* duty to disclose the strike (it did not), any such duty was "concurrent [with a] *contractual*" duty under the implied covenant, thus "bar[ring] identical fraud claims under the economic loss rule." *Id.* (emphasis added) (citation omitted). The economic loss rule therefore bars Plaintiff's tort theories.

## III.   PLAINTIFF'S NEW ALLEGATIONS DO NOT SAVE HIS CLAIMS

In his second amended complaint, Plaintiff adds two inflammatory allegations: (1) that PCM was "ridiculously dangerous" during the strike, and (2) that Vail "circulated" so-called "talking points" supposedly to "coach" employees to "mislead" guests so they would not "refund unused lift tickets." Compl. ¶¶ 26, 34. These allegations are incorrect, but they would not prevent dismissal even if true.

***Purported Dangerousness.*** To be clear, Plaintiff does not allege that he (or anyone) suffered a physical injury skiing at PCM during the 2024/2025 holiday season, let alone as a result of the strike. Nor does he allege Vail violated any safety protocol whatsoever. Rather, Vail made sure to open only the terrain it could operate safely. Plaintiff's opinion that PCM looked "dangerous" has no bearing on his claims.

***Talking Points.*** The alleged "talking points" also do not save the Complaint. Plaintiff does not allege that he (or anyone) *heard* any of these "points," so they are immaterial to his claims. *Sanchez v. Ford Motor Co.*, 2014 WL 2218278, at *2 (D. Colo. May 29, 2014) (dismissing claims based on representations the plaintiff "did not see").[8] And regardless, he purchased his nonrefundable season pass eight months before the strike, so he could not have been dissuaded from "refund[ing] unused lift tickets." Compl. ¶ 34. Finally, the "points" would not have been misleading even if Plaintiff had heard them, because PCM *did* remain operational throughout the strike, "open[ing] terrain only as it [was] safe to do so." *Id.* Ex.1.

## CONCLUSION

Vail respectfully asks the Court to dismiss this action.

---

[8] Plaintiff's allegations and exhibit show that the points were "a reminder to stick to policy[,] *not what to discuss with the guests*," Compl. ¶ 32 (emphasis added), and staff were instructed "to offer no information" to guests, *id.* Ex.1.

Dated: May 12, 2025

Respectfully submitted,

*/s/ Blaine J. Benard*
Blaine J. Benard (5661)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
(801) 799-5800
bjbenard@hollandhart.com

Robert Reeves Anderson*
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
(303) 863-1000
reeves.anderson@arnoldporter.com

Alexander D. White*
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
(303) 295-8517
adwhite@hollandhart.com

William T. Sharon*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
william.sharon@arnoldporter.com

*Pro hac vice*

*Attorneys for Defendant*

I, Blaine J. Benard, certify that this Defendant's Motion to Dismiss contains 7,747 words and complies with DUCivR 7-1(a)(4).