IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 25-cv-02056-NYW-KAS

CHRISTOPHER BISAILLON, on behalf of himself and those similarly situated,

    Plaintiff,

v.

VAIL RESORTS, INC.,

    Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on Defendant's Motion to Dismiss ("Motion"). [Doc. 64]. Plaintiff has responded in opposition, [Doc. 67], and Defendant has replied, [Doc. 68]. Upon review, the Court concludes that oral argument would not materially assist in the disposition of the Motion. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

The following facts are drawn from the Second Amended Class Action Complaint and Jury Demand, [Doc. 37], and other properly considered documents.[1] Defendant Vail

---

[1] "[C]ourts can consider a document central to the plaintiff's claim and referred to in the complaint in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *White v. Lucero*, 135 F.4th 1213, 1219 (10th Cir. 2025) (cleaned up). Here, Plaintiff's claims reference and rely on his purchase of lift passes for Defendant's ski resorts. *See, e.g.*, [Doc. 37 at ¶¶ 37, 43, 50]. He also argues that Vail made misrepresentations to its customers in order to exploit its refund policy at customers' expense. *See* [*id.* at ¶¶ 33–35]. The Court thus considers the purchase confirmation for Plaintiff's lift passes, [Doc. 65-1], and the terms and conditions accompanying those passes (which contain and/or incorporate the relevant refund policies), [Doc. 65-3], as central to Plaintiff's claims. Plaintiff does not dispute the authenticity of these documents.

Resorts, Inc. ("Defendant" or "Vail") owns and operates 42 mountain resorts, including

Park City Mountain Resort ("PCMR") in Park City, Utah.  [*Id.* at ¶¶ 8–9].  A one-day lift

ticket at PCMR currently costs $288 for an adult and $189 for children twelve and under.

[*Id.* at ¶ 14].  Vail offers a "modest discount" for skiers who purchase a multi-day "Epic

Pass" or season pass.  [*Id.* at ¶ 15].

## I.     Vail's Terms and Conditions

Any lift ticket or other "lift access product" purchased from Vail is subject to Vail's

terms and conditions ("Terms").  [Doc. 65-3 at 2].[2]  The Terms grant Vail broad discretion

to operate its properties "in the manner it deems appropriate in its sole and exclusive

judgment":

> 1. **Resort Operations.**  Vail Resorts has the right, in its sole and absolute discretion, to operate its resorts, facilities, and amenities in the manner it deems appropriate in its sole and exclusive judgment.  Vail Resorts' right to operate in the manner it deems appropriate includes, but is not limited to, the right to modify, expand, reduce, or cease operations of any resorts, facilities, or amenities at any time and for any period of time, the right to implement, modify, expand, reduce, or cease any policies or procedures related to any resorts, facilities, or amenities or the use of your Season Pass or other lift access product, and the right to implement, modify, expand, reduce, or cease any reduced capacity or reservations systems or other requirements to use your Season Pass or other lift access product.

[*Id.* at 4 ¶ 1].  The following paragraph disclaims any guarantees as to Vail's lift access

products, including any guarantees that a purchaser will be able to access any specific

resorts or terrain at any given time:

> 2. **No Guarantee. VAIL RESORTS DOES NOT MAKE ANY GUARANTEES WITH RESPECT TO ITS SEASON PASSES OR OTHER LIFT ACCESS PRODUCTS.**  For example, your purchase of any Season Pass or other lift access product does not guarantee:  (a) access to any

---

[2] When citing to page numbers in the Parties' briefs and exhibits, the Court refers to the page number assigned by the Court's Case Management/Electronic Case Files (CM/ECF) system.

resorts, terrain, facilities, or amenities at any given time or for any number of days or for any minimum number of days; (b) any particular guest experience or your satisfaction with your guest experience at or with any resorts, facilities, or amenities; or (c) your ability to reserve any number of days or minimum number of days when Vail Resorts operates under a reduced capacity or reservation system.  Your admission to any resorts, facilities, or amenities is subject to, among other things, capacity constraints and closures.  Nothing in these Terms is a commitment by Vail Resorts to keep any resort, facilities, or amenities open for any particular period or amount of time and Vail Resorts reserves right to close any of its resorts, facilities, or amenities in its sole and absolute discretion.  Vail Resorts is not obligated to sell you a Season Pass, a lift access product, or any other products or services and expressly reserves the right, in its sole and absolute discretion, to refuse to sell any products and services to you or any other person.

[*Id.* at 4 ¶ 2].[3]

Other portions of the Terms regulate potential disputes between a purchaser and Vail.  For instance, the Terms state that a purchaser's "sole remedy" for their "inability to use [a] Season Pass or other lift access product" is the refund policy set out in the Terms.  [*Id.* at 7 ¶ 17(c)].  The "Refund Policy" provision incorporates separate refund policies for season passes and lift tickets.  [*Id.* at 5 ¶ 9].  According to Plaintiff, the refund policy relevant to this case was to "refund unused lift tickets if the customer made a request for a refund(s) by 5:00 PM of the last day the ticket or pass could be used."  [Doc. 37 at ¶ 34]; *see also* [Doc. 65-3 at 15 (setting out such a policy for single-day lift tickets and a similar policy for multi-day tickets)].

The Terms also include a class action waiver that requires purchasers to resolve disputes "relating to or arising out of" the Terms "on an individual basis":

20. **Class Action and Jury Waiver.**   YOU MAY ONLY RESOLVE

---

[3] The version of the Terms submitted by Vail emphasizes language in several ways, including highlighting, bolding, and capitalization.  *See* [Doc. 65-3].  These markups do not impact the Court's analysis.  The Court omits highlighting when quoting the Terms but otherwise includes markup as it appears in the Terms unless otherwise noted.

DISPUTES RELATING TO OR ARISING OUT OF THESE TERMS ON AN INDIVIDUAL BASIS AND MAY NOT BRING AND EXPRESSLY WAIVE THE RIGHT TO BRING A CLAIM AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION. CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER ACTIONS ARE NOT ALLOWED. YOU HEREBY WAIVE YOUR RIGHT TO A JURY TRIAL IN ANY CLAIM OR CAUSE OF ACTION RELATING TO OR ARISING OUT OF THESE TERMS.

[*Id.* at 8–9 ¶ 20]. The Terms contain a choice of law provision designating Colorado law as governing "[t]hese Terms and the relationship between" a purchaser and Vail:

14. **Governing Law.** These Terms and the relationship between you and Vail Resorts will be governed by the laws of the State of Colorado in the same manner as such laws are applied to agreements made, entered into, and performed entirely in Colorado.

[*Id.* at 6 ¶ 14]. And the Terms' forum selection clause further requires all lawsuits "relating to or arising out of" the Terms be brought in Colorado's federal or state courts. [*Id.* at 6 ¶ 15].

## II. Plaintiff's Trip to PCMR and the Ski Patrol Strike

Plaintiff Christopher Bisaillon ("Plaintiff" and "Mr. Bisaillon") resides in and is a citizen of Illinois. [Doc. 37 at 4 ¶ 4]. In 2024, attracted by Vail's advertisements promising an "experience of a lifetime," Mr. Bisaillon planned a weeklong family holiday ski trip to PCMR. *See* [*id.* at ¶¶ 36–43]. Mr. Bisaillon purchased lift tickets—specifically, season passes—for his family in April 2024. [*Id.* at ¶ 37; Doc. 65-1]. On December 27, 2024,[4] Mr. Bisaillon and his family arrived in Park City. [Doc. 37 at ¶ 36].

---

[4] The Second Amended Complaint alleges that Mr. Bisaillon and his family arrived in Park City on December 27, 20<u>25</u>. [Doc. 37 at ¶ 36]. Because this case was filed prior to that date, and the case revolves around events occurring in December 2024, *see, e.g.,* [*id.* at ¶¶ 19–20], the Court infers that the reference to December 27, 2025 is a typographical error.

Unbeknownst to the Bisaillon family, however, the ski patrol union at PCMR went on strike that same day.  [*Id.* at ¶ 16].  Mr. Bisaillon alleges that Vail had known the strike was unavoidable since December 16, 2024, due to an ongoing labor dispute.  [*Id.* at ¶¶ 17–19].  The strike "paralyzed" PCMR.  [*Id.* at ¶ 22].  The labor shortage from the strike meant that less than 20% of the mountain was open for the holiday crowds, resulting in lift lines that lasted up to three hours.  [*Id.* at ¶¶ 21–22].  But when the strike began, Vail did not warn consumers and instead continued to sell "thousands of lift tickets as though it was business as usual."  [*Id.* at ¶¶ 19–20].  Vail also instructed its employees to "intentionally mislead consumers" by denying or understating the operational issues caused by the strike.  [*Id.* at ¶¶ 29–35].  Plaintiff alleges that Vail did so to exploit its refund policy of only refunding unused lift tickets—if Vail's representatives could persuade customers to "preserve as many bookings as possible," Vail would not have to refund their lift tickets.  [*Id.* at ¶¶ 33–35].

The ski patrol strike turned the Bisaillon family's holiday vacation into a "colossal disaster."  [*Id.* at ¶¶ 38–43].  They did not hear about the strike until they arrived at PCMR, saw the large lift lines, and heard about the strike from other customers.  [*Id.* at ¶ 38].  The hours-long waits caused Mr. Bisaillon and his family to cut short most of their skiing days and skip others entirely.  [*Id.* at ¶¶ 39–42].  Mr. Bisaillon alleges that he spent $15,000 on the trip and ultimately skied fewer than ten runs over the course of a week.  [*Id.* at ¶ 43].

### III.    Procedural Background

Mr. Bisaillon brings this action against Vail on behalf of himself and a putative class of others who purchased a lift ticket or pass from Vail to ski at PCMR and used that ticket

to ski during the strike. *See* [*id.* at ¶ 45]. He originally sued in Utah federal court. [Doc. 1; Doc. 37 at 1]. Vail asserted the Terms' forum selection clause, [Doc. 41], and the District of Utah court transferred the case to this Court, [Doc. 46].

Plaintiff's operative Second Amended Complaint brings three claims: (1) deceptive or unconscionable sales practices in violation of the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. §§ 13-11-1 to -23, (2) fraudulent concealment; and (3) unjust enrichment. [Doc. 37 at ¶¶ 55–75]. He asserts federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). [Doc. 37 at ¶ 6]. Vail moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. [Doc. 64].

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017). Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The Tenth Circuit has explained that

> Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack,

6

> the district court must accept the allegations in the complaint as true.
> Second, a party may go beyond allegations contained in the complaint and
> challenge the facts upon which subject matter jurisdiction depends.  In
> addressing a factual attack, the court does not presume the truthfulness of
> the complaint's factual allegations, but has wide discretion to allow
> affidavits, other documents, and a limited evidentiary hearing to resolve
> disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotations and citations omitted).

The Court construes Vail's Motion as a facial attack on jurisdiction.  The Motion focuses on the sufficiency of Plaintiff's allegations, not the underlying facts.  Although Vail has submitted several documents in conjunction with its Motion, they are properly considered under a Rule 12(b)(6) standard and may thus be considered in resolving a Rule 12(b)(1) facial attack.  *See Alexander v. Two Oaks Invs., LLC*, No. 23-cv-00406-SH, 2024 WL 3747166, at *4 (N.D. Okla. Aug. 9, 2024) (citing *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010)); *see also supra* note 1.

## II.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft*

7

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.    Law of the Case

Vail also asks the Court to resolve some issues using the law of the case doctrine. [Doc. 64 at 14–15]. This doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). "As it is most frequently applied, law of the case encompasses a lower court's adherence to its own prior rulings, to the rulings of its superior court in the case, or to the rulings of another judge or court in the same case or a closely related case." *Aguinaga v. United Food & Com. Workers Int'l Union*, 854 F. Supp. 757, 773 (D. Kan. 1994). With regard to a district court's adherence to its own prior rulings, "questions that have not been decided do not become law of the case simply because they could have been decided." *Id.* "However, law of the case principles may apply when a court concludes that an issue was decided implicitly." *Id.* "[T]he law of the case doctrine is fundamentally permissive, affording courts" discretion

8

with respect to its application.  *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1211 (10th Cir. 2023).

## ANALYSIS

Vail first argues that Plaintiff is bound by the class action waiver in the Terms.  [Doc. 64 at 15–16].  And because CAFA is the only asserted basis for federal jurisdiction, Vail contends that the Court must dismiss the case on this basis alone.  [*Id.*].  Before enforcing the class action waiver, however, the Court must first decide (1) whether the Terms constitute a valid contract and (2) whether Plaintiff's claims fall within the waiver.

## I.    The Terms Constitute a Valid Contract

Vail argues that the Court can enforce the class action waiver because the District of Utah court already decided that "[t]he Terms constitute a binding agreement between [Plaintiff] and [Vail]."  [*Id.* at 15 (quoting [Doc. 46 at 6])].  Plaintiff responds that the District of Utah did not decide this issue and that the class action waiver is unenforceable because the Terms are not a valid contract.  [Doc. 67 at 14–20].

### A.    Law of the Case

The Court agrees with Mr. Bisaillon that the District of Utah court did not decide the validity of the contract.  That court expressly disclaimed such a ruling:  "[T]he court need not evaluate whether the Terms as a whole are illusory for lack of consideration.  At this stage, the court's inquiry is limited to the validity and scope of the forum selection clause, not the overall validity of the contract."  [Doc. 46 at 7 (footnote omitted)].  The portion of the transfer order that Vail relies on—that the Terms "constitute a binding agreement"—is simply a quotation from the Terms themselves, not a conclusion of law.  [*Id.* at 6 (quoting [Doc. 42-3 at 1 (an earlier-filed version of the Terms)])].  Because the

9

District of Utah court did not "decide[] upon a rule of law" as to the validity of the Terms, there is no law of the case to apply on this point. *Roth*, 466 F.3d at 1187. Accordingly, the Court decides the validity of the Terms in the first instance.

### B.    Choice of Law

The first step of this inquiry is to determine what law governs the Terms' validity. Vail asks the Court to honor the choice of law provision and construe the Terms using Colorado law. [Doc. 68 at 8]. Mr. Bisaillon counters that because the Terms are invalid, the Court should employ Colorado's default choice of law rules and apply Utah substantive law. [Doc. 67 at 15–16].

Mr. Bisaillon is correct that the Court cannot reflexively enforce the choice of law provision. As a federal court sitting in diversity jurisdiction, the Court applies the conflict-of-law rules of the forum state. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). "Generally, Colorado enforces contractual choice of law provisions, and follows the Restatement (Second) of Conflict of Laws for Contracts, § 187, in determining the enforceability of these provisions." *Am. Express Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999). But as the Tenth Circuit has recognized, there is a "logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid." *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006). The Court need not "resolve this typically thorny choice-of-law question," though, because the Court finds that the Parties formed a valid contract under either Colorado or Utah law. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *see also Guinn v. Cedarhurst Living, LLC*, No. 18-cv-02182-DDC-KGG, 2018 WL 5281564, at *3 (D. Kan. Oct. 24, 2018)

("Nevertheless, this choice of law issue is not pivotal because the legal principles governing contract formation—at least as they apply to the current issue here—do not vary significantly from state to state.").

### C.    Validity of the Terms

Mr. Bisaillon argues that the Terms are invalid because they were fraudulently induced and unsupported by mutuality of consideration.  [Doc. 67 at 16–20].  The Court begins with the second argument.

***Sufficiency of Consideration.***  Mr. Bisaillon contends that Vail failed to provide consideration for the Terms because any promises it made under the Terms were illusory.  [*Id.*].  Vail replies that although the Terms provide it with broad discretion, a season pass purchaser like Mr. Bisaillon does receive consideration—a promise of access to Vail's resorts for the entirety of that season.  [Doc. 68 at 10–13].  The Court respectfully agrees with Vail.

Under both Colorado and Utah law, a valid contract must be supported by consideration.  *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011); *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985).  "[A]ny benefit to a promisor or any detriment to a promisee at the time of the contract—no matter how slight—constitutes adequate consideration."  *Lucht's Concrete*, 255 P.3d at 1061; *accord Healthcare Servs. Grp., Inc. v. Utah Dep't of Health*, 40 P.3d 591, 598 (Utah 2002) ("[T]here is consideration whenever a promisor receives a benefit or where [a] promisee suffers a detriment, however slight." (quotation omitted)).  Some promises, however, are "illusory" and provide no consideration.  *See, e.g., Sentinel Acceptance Corp. v. Colgate*, 424 P.2d 380, 67–68 (Colo. 1967); *Res. Mgmt. Co.*, 706

11

P.2d at 1036.  A promise is illusory if it "make[s] performance entirely optional with the promisor."  *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153 (D. Colo. 2012) (quotation omitted) (applying Colorado law), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013).  Said differently, an illusory promise is "only the facade of a promise, i.e., a statement made in such vague or conditional terms that the person making it commits himself to nothing."  *Res. Mgmt. Co.*, 706 P.2d at 1036.

Plaintiff fails to plausibly allege that the benefit afforded by Vail's lift passes was illusory.  As Plaintiff implicitly concedes, a season pass or "Epic Pass" confers the promise of access to Vail's resorts during an entire ski season.  [Doc. 37 at ¶ 15; Doc. 65-3 at 4 ¶ 4 (advising that a purchaser's resort access varies by lift access product and is subject to conditions)].[5]  To be sure, Vail couches that promise in significant discretion.  *See* [Doc. 65-3 at 4 ¶¶ 1–2].  Given the unpredictability of winter weather and other factors, Vail cannot guarantee that any terrain at any resort will be available at any specific time.  [*Id.* at 4 ¶ 2].  But the discretion Vail retains to determine when and how to operate its resorts is tempered by the implied covenant of good faith.  *See Genova v. Banner Health*, 896 F. Supp. 2d 993, 998 (D. Colo. 2012) ("The duty to act in good faith arises when the contract grants a party discretionary authority.  The party may not exercise its discretion in a manner that defeats the reasonable expectations of the other party." (applying Colorado

---

[5] According to Plaintiff, Vail supports this promise of resort access with an additional promise that it will refund unused lift tickets.  [Doc. 37 at ¶ 34].  So, crediting Plaintiff's view, Vail's promise to customers can be summarized as "resort access or your money back."  If true, this would only further demonstrate that Vail provided consideration.  Vail, however, counters that season passes like those purchased by Plaintiff are generally nonrefundable.  [Doc. 68 at 11 n.2; Doc. 65-3 at 5 ¶ 9.a].  Neither Party has submitted the refund policy for season passes.  Because the Court finds that Vail's promise of resort access constitutes consideration on its own, the Court need not resolve this issue.

law)); *A.I. Transp. v. Imperial Premium Fin., Inc.*, 862 F. Supp. 345, 348 (D. Utah 1994) ("Where an express term establishes a right or power to be exercised in the sole discretion of one party, in Utah that right or power must be exercised consistent with the covenant of good faith."). As Vail points out, the Tenth Circuit has previously invoked the covenant of good faith to uphold the validity of Vail's Terms over a similar illusoriness argument: "[I]f the meaning of 'ski season' was when Vail decided to open and close its resorts in its sole discretion, this discretion would be constrained by the covenant of good faith. As a result, the contracts are not illusory . . . ." *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1153–54 (10th Cir. 2023) (applying Colorado law).

Plaintiff does not acknowledge *McAuliffe* and instead argues that the Terms "obligat[e] Vail to do nothing and allow[] them to cancel if they desire." [Doc. 67 at 19]. By focusing only on the Terms' disclaimers, Plaintiff overlooks the underlying substantive "promise[] to provide [purchasers] with varying levels of access to [Vail's] resorts for the entire . . . ski season." *McAuliffe*, 69 F.4th at 1144. Understanding this promise to include a covenant of good faith, as the Tenth Circuit did in *McAuliffe*, means the Terms do not "obligat[e] Vail to do nothing." [Doc. 67 at 19]. For example, if Vail made no effort to open its resorts and simply pocketed season pass purchasers' money, that would patently contradict its promise of resort access and thus violate the covenant of good faith. *See, e.g.*, *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994) ("When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached."). Nor do the Terms permit Vail to cancel a passholder's resort access on a whim; they allow revocation of a lift pass only with "good

13

cause." [Doc. 65-3 at 5 ¶ 11]. In short, Vail's performance under the Terms was not "entirely optional." *Vernon*, 857 F. Supp. 2d at 1153. Because Vail's discretion to open, close, and otherwise operate its resorts is subject to the covenant of good faith, its promise of resort access was not illusory.

**Fraudulent Inducement.** Having concluded that Plaintiff's lift pass was supported by adequate consideration, the Court also respectfully rejects his fraudulent inducement argument.[6] Plaintiff argues that he was "fraudulently induced to use [Vail's] lift ticket and consummate the transaction" that gave the Terms legal effect. [Doc. 67 at 20]. A party that has been fraudulently induced to enter a contract may rescind the contract. *See Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997); *Miller v. Celebration Mining Co.*, 29 P.3d 1231, 1235 (Utah 2002). But a fraudulent inducement theory requires that the defrauded party rely on the alleged misrepresentations when entering the contract. *See Morrison v. Goodspeed*, 68 P.2d 458, 463 (Colo. 1937); *Miller*, 29 P.3d at 1235. Here, Plaintiff purchased his lift passes in April 2024, long before Vail even anticipated the strike. [Doc. 65-1]. Vail's alleged misrepresentations about the strike did not occur until December 2024, [Doc. 37 at ¶¶ 18, 29–35], so Plaintiff could not have relied on them when purchasing his lift passes months earlier, *see Hawley v. KH Gov't Sols., LLC*, No. 22-cv-01793-NYW-KLM, 2023 WL 4899534, at *3 (D. Colo. Aug. 1, 2023) (observing that fraudulent inducement requires "some allegations of fraudulent behavior prior to the formation of a contract" (citations omitted)).

---

[6] Plaintiff also makes the conclusory argument that Vail procured Plaintiff's assent to the Terms through "overreaching." [Doc. 67 at 16, 19]. But he does not elaborate or develop this point, and the Court need not "consider such issues adverted to in a perfunctory manner." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (quotation omitted).

    **D.**       **Enforceability of the Choice of Law Provision**

In sum, the Court respectfully concludes that Plaintiff fails to plausibly allege any theory for invalidating the contract formed through Mr. Bisaillon's purchase of lift passes and acceptance of Vail's Terms. Because the Parties' contract is valid, the Court returns to Colorado's default rule of enforcing contractual choice of law provisions. *Am. Express*, 38 F. Supp. 2d at 1238. This rule controls unless the Parties' choice of law was without a reasonable basis or would violate public policy. *Id.*; *accord* Restatement (Second) of Conflict of Laws § 187 (A.L.I. 1971, Sept. 2025 update). Plaintiff does not suggest—nor does the Court find—that either of these exceptions apply here. Accordingly, the Court will enforce the Terms' choice of law provision and construe the Terms using Colorado law.

## II.    The Class Action Waiver Applies to Plaintiff's Claims

With the validity of the Terms resolved, the Court considers Vail's argument that the Terms' class action waiver bars Plaintiff's class claims and eliminates the sole asserted basis for federal jurisdiction. [Doc. 64 at 15–16]. The class action waiver covers "disputes relating to or arising out of these Terms." [Doc. 65-3 at 8 ¶ 20 (capitalization altered)]. Vail contends that the District of Utah court already decided that Plaintiff's claims "relate to" the Terms. [Doc. 64 at 15–16 (quoting [Doc. 46 at 7])]. Plaintiff responds that his claims do not relate to or arise from the Terms. [Doc. 67 at 20–23]. He does not dispute that the District of Utah's transfer order decided this issue but asserts that the transfer order cannot be law of the case because it is interlocutory. [*Id.* at 14–15].

The Court agrees with Vail that the District of Utah court issued law of the case on whether Plaintiff's claims "relate to" the Terms. The issue in the transfer order was the

validity and scope of the Terms' forum-selection clause, [Doc. 46 at 6–8], which contains nearly identical language covering "lawsuits relating to or arising out of these Terms," [Doc. 65-3 at 6 ¶ 15]. The District of Utah court held that "[t]he Terms undoubtedly relate to Plaintiff's claims." [Doc. 46 at 7]. Relying on the Terms' language that grants Vail discretion over resort operations and disclaims guarantees as to any specific access or guest experience, the court explained that "Plaintiff's claims stem from his limited access to the terrain (and the accompanying long lines) as a result of Vail's alleged failure to inform him beforehand of the impact of the Strike. Therefore, they relate to the Terms." [*Id.* at 8]. Although the District of Utah court was interpreting the Terms using federal law, its analysis was limited to the plain meaning of the phrase "relating to." [*Id.* at 7]. Under Colorado law, this Court's interpretation of those words would also focus on their plain meaning. *E.g.*, *In re Est. of Treviño*, 474 P.3d 223, 227 (Colo. App. 2020). Plaintiff does not suggest that the analysis would be any different under Colorado law. Indeed, his arguments on this issue mirror the arguments he raised when unsuccessfully opposing application of the forum selection clause. *Compare* [Doc. 67 at 20–23], *with* [Doc. 43 at 20–22].

In the alternative, Plaintiff contends that the law of the case doctrine is "inapplicable." [Doc. 67 at 14–15]. Plaintiff asserts that "only final judgments may qualify as law of the case; where a ruling remains subject to reconsideration, the doctrine is inapplicable." [*Id.* at 14 (quoting *Unioil v. H.E. Elledge (In re Unioil, Inc.)*, 562 F.2d 988, 993 (10th Cir. 1992))]. But subsequent cases confirm that this portion of *Unioil* stands only for the unremarkable proposition that district courts are not bound by their interlocutory orders and may reconsider such rulings as they see fit. *See Blakely v. USAA*

16

*Cas. Ins. Co.*, 691 F. App'x 526, 541 n.10 (10th Cir. 2017) (citing *Unioil* in this context); *Poche v. Joubran*, 389 F. App'x 768, 774 (10th Cir. 2010) (same).  In other words, while the law of the case doctrine does not *require* district courts to hew to their prior interlocutory rulings, it does provide a "guiding norm" that a decision on a rule of law "*should* continue to govern the same issues in subsequent stages in the same case." *Syngenta*, 61 F.4th at 1211 (quotation omitted).  This approach promotes judicial consistency and efficiency.  *See Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016).

Plaintiff provides no persuasive reason not to apply the law of the case doctrine to the District of Utah's transfer order.  He correctly notes that a court may decline to apply the doctrine in order to prevent "manifest injustice."  [Doc. 67 at 15 n.1]; *Entek*, 840 F.3d at 1242.  But Plaintiff does not explain what that injustice would be, and the Court need not make his arguments for him.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").  Nor does the Court perceive any manifest injustice in enforcing a valid contract and declining to revisit arguments that the transferor court already rejected.  In its discretion, the Court will treat the District of Utah court's ruling that Plaintiff's claims "relate to" the Terms as law of the case.

Accordingly, the class action waiver applies to Plaintiff's claims.  Plaintiff's class claims are **DISMISSED with prejudice**.  Absent any other asserted basis for federal jurisdiction, Plaintiff fails to carry his burden to establish subject matter jurisdiction over his individual claims.  *See Kline*, 861 F.3d at 1180.  Plaintiff's individual claims are therefore **DISMISSED without prejudice**.  *Brereton v. Bountiful City Corp.*, 434 F.3d

17

1213, 1219 (10th Cir. 2006) ("[A] jurisdictional defect calls for a dismissal without prejudice."); *see also Gutman v. PointsBet USA Inc.*, No. 22-cv-02137-SKC-SBP, 2024 WL 5493716, at *6 (D. Colo. Aug. 21, 2024) (dismissing individual claims for lack of subject matter jurisdiction where plaintiffs' class claims were barred by class action waivers and plaintiffs asserted no basis for federal jurisdiction other than CAFA). Defendant's Motion is respectfully **GRANTED** insofar as it seeks dismissal under Rule 12(b)(1), and the Court need not reach the Parties' remaining arguments as to whether Plaintiff stated plausible claims for relief.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    Defendant's Motion to Dismiss [Doc. 64] is **GRANTED**;

(2)    Plaintiff's class claims are **DISMISSED with prejudice**;

(3)    Plaintiff's individual claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction;

(4)    Defendant is awarded its costs under D.C.COLO.LCivR 54.1; and

(5)    The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED:  March 25, 2026                          BY THE COURT:

Nina Y. Wang
United States District Judge

18